**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN R. ANDERS, JR.,** | : | **Civil No. 1:21-CV-235** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

**<u>MEMORANDUM OPINION</u>**

**I.     <u>Introduction</u>**

Glenn Anders was approximately 37 years old when he submitted this, his second application for Social Security benefits in January of 2019, alleging that he was totally disabled from performing any work. (Tr. 11). Anders had no past relevant work history and for many years reported no earned income whatsoever. (Tr. 20, 232). At the time of Anders' disability hearing before an Administrative Law Judge, (ALJ) he was living in his parents' home. (Tr. 86).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

In Anders' case, the ALJ was presented with a claimant who had a medical history marked by diagnoses of anxiety and depression, conditions which were treated in a conservative manner. In addition, Anders received routine health care for an array of physical ailments. Anders' treatment regimes, however, were reportedly subject to interruption due to periods of incarceration. (Tr. 35, 45, 55). Moreover, none of Anders' treating caregivers opined that his physical or emotional impairments were disabling, and at least four state agency experts who examined Anders' medical history concluded that he was not disabled. (Tr. 106-51). Considering all of this evidence, the ALJ in Anders' case determined that he could perform a range of light work and denied his disability application. (Tr. 8-22).

Anders now appeals this decision, arguing that the ALJ erred in considering the effects of his severe and non-severe impairments and in fashioning a residual functional capacity (RFC) assessment which concluded that he could perform light work. In considering Ander's appeal of this disability determination, we are enjoined to apply a deferential standard of review to Social Security appeals, one which simply calls for a determination of whether substantial evidence supported the ALJ's decision. Mindful of the fact that, in this context, substantial evidence is a term of art which "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154

(2019), we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   **Statement of Facts and of the Case**

### A. **Anders' Medical History**

On January 22 and April 2, 2019, Glenn Anders applied for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, alleging an onset of disability in November of 2018. (Tr. 11). This was Anders' second Social Sceurity disability application, the plaintiff having previously unsuccessfully sought benefits in 2012. (Tr. 129). Anders was born in 1981 and was 37 years old at the time of the alleged onset of his disability. (Tr. 20). He had a high school education, but possessed no past relevant work experience. (Id.) Indeed, for many years prior to submitting this application for benefits, Sanders had no reported income whatsoever. (Tr. 232).

Anders alleged that he was disabled due to the combined effects of a series of impairments including obesity, restless legs syndrome, gastroesophageal reflux disease, familial adenomatous polyposis syndrome, acquired short bowel syndrome, generalized anxiety disorder, major depressive disorder and post-

traumatic stress disorder. (Tr. 13).  However, Anders' medical records provided only modest support for this claim of disability.

For example, during the pertinent time period, Anders received counseling for his emotional impairments through PA Counseling Services. (Tr. 293-363, 427-58, 485-528). These counseling records confirmed that Anders experienced anxiety and depression, but also consistently stated that he was oriented in time, place, and person. (Id.) A number of treatment notes reported moderate or limited improvement in Anders' mental state with therapy, and the records consistently indicated that he displayed a good capacity to respond to and benefit from counseling. (Id.) Anders' medical treatment records also confirmed the various physical diagnoses listed in his disability application but reflected relative conservative care for these conditions. (Tr. 427-58). In addition, Anders' treatment records revealed that there were interruptions in his care due to the plaintiff's incarceration. (Tr. 35, 45, 55).

Notably absent from these medical records was any indication by any treating source that Anders' physical or emotional impairments were in any way disabling. Thus, this disability application drew no medical opinion support from those health care providers who knew Anders best. There was, however, a medical consensus from at least four state agency medical experts, Drs. Ritner, Lesgaspi, Small, and Plowman, that Anders' physical and emotional impairments were not disabling. (Tr.

4

106-51). Instead, these medical sources all agreed that Anders could perform some work.

It was on this meager medical record that Anders' disability application came to be heard by the ALJ.

### B. **The ALJ's Hearing and Decision**

It is against the backdrop of this evidence that the ALJ conducted a hearing in Anders' case on March 26, 2020. (Tr. 81-101). During this hearing the ALJ received testimony from Anders and a vocational expert. For his part, Anders testified that he was living with his parents, (Tr. 86), and stated that he retained the ability to dress, shower, cook, shop, do laundry and dishes, clean and vacuum, sweep, do yard work, drive, stoop, and climb stairs and ladders. (Tr. 86-88).  Following this hearing, on April 13, 2020, the ALJ issued a decision denying this application for benefits. (Tr. 8-22).

In that decision, the ALJ first concluded that Anders met the insured requirements of the Act and had not engaged in substantial gainful activity since the alleged date of the onset of his disability in November of 2018. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Anders' obesity, restless legs syndrome, gastroesophageal reflux disease, familial adenomatous polyposis syndrome, acquired short bowel syndrome, generalized

anxiety disorder, major depressive disorder, and post-traumatic stress disorder were all severe impairments (Id.)

At Step 3, the ALJ determined that none of these impairments met or medically equaled the severity of one of the listed impairments. (Tr. 14-16). Between Steps 3 and 4 the ALJ concluded that Anders retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the work is limited to simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, work place changes, and occasional interaction with the public and supervisors.

(Tr. 16).

In reaching this RFC determination, the ALJ detailed Anders' modest treatment history, noted the complete absence of treating source medical opinion supporting his disability claims, and cited the state agency medical consensus which found that he retained the ability to do some work. (Tr. 16-20).

Having reached these conclusions regarding the medical clinical and opinion evidence, the ALJ found that Anders could perform jobs that existed in significant numbers in the national economy. (Tr. 20-22). Accordingly, the ALJ determined that

Anders had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Anders challenges the adequacy of the ALJ's decision, arguing that the ALJ erred in considering the effects of his severe and non-severe impairments and in fashioning a residual functional capacity (RFC) assessment which concluded that he could perform light work. This appeal is fully briefed by the parties and is, therefore, ripe for resolution. As discussed in greater detail below, having considered the arguments of counsel, carefully reviewed the record, and remaining mindful of the deferential standard of review which applies here, we conclude that the ALJ's decision is supported by substantial evidence. Accordingly, we will affirm the decision of the Commissioner denying this claim.

## III. **Discussion**

### A. **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012).

7

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the

agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could

11

function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C.

12

§1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

14

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

16

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

### C.    <u>The Decision of the ALJ Will Be Affirmed.</u>

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but

more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," <u>Pierce</u>, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Biestek</u>, 139 S. Ct. at 1154. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the ALJ's decision that Anders was not entirely disabled.

At the outset, we find that the ALJ did not err in concluding, based upon the greater weight of the medical evidence, that Anders had the ability to perform some light work. In this regard, like the ALJ, we note that Anders' disability application was bereft of any credible medical opinion support. No treating source opined that Anders was disabled, and the medical consensus among the state agency experts was that Anders retained the ability to perform some work. On these facts, it is axiomatic that:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. <u>See</u> 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, <u>see, e.g.</u>, 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," <u>Brown v. Astrue</u>, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well. <u>See</u> SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f)

18

require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

We also agree that the ALJ's decision aptly summarized the meager medical record presented in this case, carefully considered all of Anders' severe and non-severe ailments, and fashioned an RFC that took his physical and emotional limitations into account by restricting the plaintiff to light work involving simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, work place changes, and occasional interaction with the public and supervisors. Given that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted" Hess, 931 F.3d at 211, in this case we find that  the ALJ's RFC determination met all of the requirements prescribed by law. Further this RFC determination was supported by substantial evidence; that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154.

At bottom, Anders invites us to re-weigh the evidence and fashion a different RFC in this case. However, we are mindful that our "'review of the ALJ's assessment of the [claimant]'s RFC is deferential,' and the 'RFC assessment will not be set aside if it is supported by substantial evidence.'" Stancavage v. Saul, 469 F.Supp.3d 311, 339 (M.D. Pa. 2020). In the instant case, we find that the ALJ's assessment of the

19

evidence complied with the dictates of the law and was supported by substantial evidence, a term of art which means less than a preponderance of the evidence but more than a mere scintilla, <u>Richardson</u>, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565.

This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the plaintiff's argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

For the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 5, 2022